The First Division, the Honorable Justice Carl Anthony Walker presiding. Case number 1-7-2-4-1-2, People v. Michael Carraway. Okay, thank you, Darren. And if we could have the lawyers who will be arguing to please introduce yourselves. In your honors, my name is Stacey Schunkweiler and I am here today on behalf of the defendant appellant, Michael Carraway. Assistant State's Attorney Stacey Weber and I'm appearing on behalf of the people. All right, thank you. And I'm Justice Walker. I'm serving as the presiding justice, and I also have with me today Justice Pierce and Justice Coughlin. And I'll start with you, Ms. Schunkweiler. Is it Witter or White? Witter. Schunkwitter, correct? Weiler. Oh, that's okay. I'm sorry. That looks like a T. I just I can't see very well, and I probably should have my glasses on. Okay, it is an L. It looks like a T to me for a second. And so how much time do you need, Ms. Schunkweiler? Please and reserve five for rebuttal. Okay. All right. And Ms. Weber, how much time do you need? Your Honor, I anticipate my argument will take 15 minutes. Okay. All right. And so, Ms. Schunkweiler, you can begin. Thank you. And may it please the court, I'd like to begin my time by addressing this court's jurisdiction. As way of background, defendant was sentenced on August 21st, 2017. After the trial judge sentenced defendant, the record shows that defense counsel asked that a notice of appeal be filed on defendant's behalf and that the public defender be appointed. The trial court entered an order, both on the record and in writing, appointing the state appellate defender. Although it appears that defendant signed a notice of appeal that same day, the trial court clerk never filed the notice of appeal for defendant. Instead, the notice of appeal signed by defendant on August 21st was not filed until October 3rd, when it was filed by defense counsel. Then on November 7th, a little over a month after receiving notice that it had been appointed, the office of the state appellate defender filed a motion on behalf of defendant for leave to file late notice of appeal. That was filed 78 days after the sentencing, October 21st sentencing. The motion was then granted by this court on December 1st, and it is our contention that the motion was properly allowed by this court because the lateness as shown by the motion was not due to defendant's own culpable negligence, and there is merit to the appeal. And Ms. Feckweiler, I don't want you to waste too much time on that. I know that Justice Griffin granted that motion and that's not an issue today, so you can go ahead and move forward. In that case, what I would like to do is move on to defendant's first argument on appeal, which is the trial court erred in admitting into evidence documents containing defendant's name and address to prove where defendants live, or excuse me, where the defendant lived. And I want to first disclose that in preparing for today's argument, I discovered a fourth district opinion entered this past June 29th, after the appellant and appellee briefs in this case were filed. The case is titled People v. Neal, and the citation is 2020 Bill App 4th 170869. It was an opinion authored by Justice Steigman. People v. Neal is a constructive possession case like this one where the state used mail addressed to the defendant at the residence where drugs were found to support a finding that the defendant lived at the residence. The court in what it describes as a matter of first impression in Illinois held that, and I quote, implied assertions of fact contained within mail and other documents are not hearsay. The court draws its definition of an implied assertion of fact from the advisory committee comments to federal rule of evidence 801. Those comments discuss nonverbal conduct that is offered as evidence that a person acted in a certain way because of that person's belief in the existence of a condition sought to be proved. A classic example of this is evidence of flight. A defendant's flight is nonverbal conduct admitted to prove a guilty conscious and to infer guilt. The advisory committee suggests in its comments to rule one, excuse me, rule 801 that an argument could be made that the nonverbal conduct. The defendant's flight in our example is an assertion of the thing sought to be proved, which is guilt in the instance of the of a defendant's flight and is therefore hearsay. But the committee points out the flaw in this argument, which is that the declarant never intended to assert anything by the nonverbal conduct. For instance, a defendant who flees cannot be said to have intended to make an assertion regarding his guilt. Accordingly, according to the advisory committee, the nonverbal conduct is not hearsay and is properly admitted. Now Neil extends the scope of the committee's analysis to include written words and holds that the act of addressing mail is nonverbal conduct, not intended as an assertion. Now, I disagree with the conclusion in Neil that written words can constitute nonverbal conduct. I also disagree with the conclusion that a person does not intend to make an assertion when that individual addresses and sends mail. In my opinion, the individual who addresses and sends mail makes a clear and intentional assertion, at least to the mail carrier, that the recipient receives mail at the address listed. I recognize, however, that I am not in a position to disagree with what is now precedent in Illinois. My search revealed no PLA has been filed in the people v. Neil, so it is not tested as of yet, and it will not be directly. So instead, I'd like to point out that Neil's application here is uncertain. This is so because we do not know how the documents in that case were used. We know only that the trial court in that case admitted into evidence one piece of opened mail and one piece of unopened mail, both of which were addressed to the defendant at the house searched. The only other mention in the opinion of the mailings was that the prosecutor argued in closing that the opened piece of mail connected the defendant to the house. Having been admitted into evidence, the mailings were presumably available to the jury during its deliberations. But we do not know whether there was testimony regarding the mailings, whether the trial court considered the hearsay nature of the mailings, or whether the trial court limited the mailings admission for purposes of showing, as the prosecutor argued in closing, that the defendant was connected to the house. I would also point out what Neil does not hold. Neil does not hold that mail can be admitted into evidence to prove the truth of matter asserted therein. It holds only that the hearsay rule does not apply to mail or other documents used to prove an implied assertion of fact. When you offer words into evidence to prove what is being asserted by those words, like the state did here through the ComEd and Comcast mailings, you are offering hearsay evidence, and Neil does not dispute this. There is also nothing in the record in this case that would support the conclusion that the state offered the mailings into evidence for any reason other than to prove residency. When defense counsel argued in Lemonade that the mailings were impermissible hearsay, the state did not deny that its purpose in offering the mailings was to prove residency. And this is precisely what it proceeded to do through officer testimony and closing argument. Indeed, it needed the mailings to prove residency because it had no other direct evidence to support this element of its constructive possession charge against defendant. Neil is also factually different. Like every other case cited in the briefs that allow mail into evidence to support a conviction for constructive possession, there was other clear, compelling evidence of the defendant's residency in Neil. The police, for example, in Neil had seen defendant come and go from the residence on several occasions, not only the day of, but the day before they conducted their search. The defendant's girlfriend, who was at home at the time of the search, testified at trial that the defendant lived with her at the residence. There was also evidence of the defendant's fingerprints found on a plastic bag containing drugs found in the residence and a deed for the residence showing the defendant as a property owner. Lastly, there was evidence that the defendant, while in custody, was texting his girlfriend at the residence to get everything, quote, out of the house. The evidence here was not so compelling, which brings me to the next argument that defendant raises on appeal, which deals with the sufficiency of the evidence. Unless the court would like me to stay and discuss the people v. Neil, I will move on. Well, the issue isn't who owned the residence. The issue is whether the defendant had possession or control over the contents within the residence, correct? Correct, but one way of showing that our court, our Supreme Court has held is through habitation. The prosecution in this case did not have to prove that the defendant owned the residence, correct? The residence, no, that he resided or lived there. Or that he controlled or was within the structure and possessed what was inside, constructively possessed him. He didn't have to own it. They didn't have to prove that he lived there. In other words, if this search warrant was executed and I was in the front room or in the residence and all this drug paraphernalia was found there, most certainly it could be inferred that I controlled the narcotics, whether I lived there or not, correct? Absolutely. Because those circumstances were not present here, the state elected to proceed on a theory that the constructive possession based on habitation. And that's why the proof of residency was necessary to their case. Counsel, what Justice Pierce is making clear is that the issue, that's just simply one prong to determine constructive possession and that whether or not he owned the home or was present in the home. Some of that may or may not matter depending on the circumstances. But in this case, he was not at the property when the search was done. It's my understanding that the door was ajar and that when the police came, the door was ajar. And so it seems to me that if someone owned the property, there would be no need to leave your door ajar. So the issue is not really who owned the property. The issue is whether he was in constructive possession. And given that he was not present, you don't have the facts in Neal where you mentioned that the girlfriend testified that, yes, he lives here with me. And he had been texting the girlfriend to tell her to get everything out of the house. And so all of that creates a different circumstance than this case. So you've already distinguished Neal pretty well. So unless there's more questions from the justices, you probably should move on. But I think Justice Pierce was just pointing out that that's just one thing to consider. You might consider whether or not the person is the owner, but you could actually be the owner of the property and still not be in constructive possession. That's, I think, what Justice Pierce is pointing out to you. And maybe I read the case law a little. Counselor, are you turning your mic off? Don't turn it off. Because every time you get ready to start talking, we can't hear you. Initially, when you start talking, we don't hear you. Take my Bluetooth device out, and maybe that will resolve the issue. Can you hear me now? Yes, we can. Okay. Thanks for letting me know that. Okay, I will move on from that point. I just do want to address, I guess, Justice Pierce, the way I read the Supreme Court opinions on constructive possession is that if the state can prove that a defendant resides at a certain location, then they might not have to go. They might not need proof necessarily that the defendant was in the location near the drugs and actually had more of a physical control. But again, we didn't have those facts here. So, as far as the sufficiency of the evidence is concerned, we have, without the two mailings, we have testimony by officers that they saw a defendant leave the residence a little less than two hours into their surveillance. You're right that they either saw or later discovered that the door was left ajar. There were mail clothes inside the residence, and there were several documents found bearing defendant's name and either a different address or no address at all, including two medicine bottles or pill bottles with the defendant's name and a different address. The majority of those documents, and maybe this goes to Justice Pierce's point, the majority of the documents that were found in the residence were found in a bedroom. There were no drugs found in the bedroom. There were two items of paraphernalia that the officers testified to, one being Ziploc bags and another being a scale. With the exception of the permission slip, which I believe was found in the kitchen, and the pill bottles were found in another room, all of the documents were in this bedroom without drugs, but with two items that the testimony was could serve as paraphernalia. Really, we are left with mail clothes that there's been no testimony that they could fit the defendant or that they were defendants. We have testimony that the officers observed the defendant at the location, not inside the location, but just leaving the location. We only know that he'd been there for two hours. We don't have any evidence of the officers coming in to the residence and seeing defendant exercise any kind of control whatsoever over the residence. We don't even know if he ever took his shoes off, for example. Certainly, without the mailings, it would be a stretch on these facts, in my opinion, and we argue, to find beyond a reasonable doubt that defendant looked at the residence or, for that matter, that he had immediate control over any of the items that were found in the residence, including the items in the safe and in the areas of the residence where documents without his name were not located. But my point is, would you agree that in order to prove the charge, the state does not have to prove that the defendant lived at that location? Yes. Okay, that's all. That's the whole point. Yes. I think that sometimes, I guess the way I look at it, Justice Pierce, is that it would seem as though it would make the state's case a little bit easier if all they had to prove was residency to allow an inference that the individual who resides there has control over everything inside. And I think that that's what the courts have said, that maybe you don't have to, especially in situations where you have multiple people living in a place, that it might be enough just to show that any one of those residents resides there, and any one of those individuals resides there and has control over the property. But that's why he's saying what he's saying, counsel, because you could reside, someone could reside in my home and have drugs found in a bedroom, and that doesn't mean that I'm in constructive possession of the drugs, so ownership is not the deciding factor here. Ownership, or even the fact that you live there, is not the deciding factor. There's all the issues that come into play, and you seem to be focusing on the wrong thing. And I apologize for that. Again, my reading of the case law seems to me that you can kind of bypass some of the control issues by showing overall control. Counsel, isn't it more important, the fact that you've got at least three adults in and out of that place? Absolutely. You haven't mentioned that. Absolutely. My next point was that the other evidence that other people resided there, not only that they were coming in and out. I don't know if they reside there or not, but they were coming in and out of the property, according to the record. That's right. Counsel, you also didn't mention the two women who came and attempted to come into the house during the warrant, and the officer stopped them and didn't allow them in. They may have been the owners of the property. It may have been the residents of the property. That's why you're simply focusing on the wrong thing. Ownership has nothing to do with constructive possession. As Justice Pierce pointed out earlier, if you're sitting in the living room at the coffee table with everything right in front of you, it's hard to argue that you're not in constructive possession, even though it's not in your pocket. And you've got cocaine sitting right in front of you at the coffee table. If that were the case, then it makes it an even more difficult case for the state. Because, again, you have all of the items that were found in the house. The state's going to have a hard time linking those to the defendant, where the majority of items that the state offered to link the defendant in this case were in a bedroom without those items, without the drugs. And only two pieces of what could be drug paraphernalia that include a scale and bags. But you're right. There was plenty of other evidence in this case that other people could have lived or lived at the residence. As Justice Coghlan points out, you've got people... Those two women that walked up to the house, even with all the police cars out there, they were still going in. They didn't care about all the activity going on. They may have been going home. And that's what they asserted. That's exactly correct. There is. And not only that, but we've got mail that was seen and some of the photographs that was in the residence that was addressed to other people as well. So really, we don't have much evidence at all in this case that the defendant exercised any control over the items and over the drugs that were located and recovered from the house. Are you done, Counsel? A couple other things, a couple other evidentiary issues that don't help the state and actually support defendants position is they've only found one piece of toiletry, one toiletry item that belonged to a male in the house as well. We've got female clothes. I think that was a bottle of cologne. Is that correct? It was. Was there anything linking that bottle of cologne? There was nothing. There was none, not even, not the clothes, not the cologne, nothing. Okay. You can continue. Okay. Based on the sufficiency of the evidence, Your Honors, the defendant in this case, the failure to, the lack of evidence in this case, the defendant requests that the court reverse his conviction outright. In the event that the court finds that the evidence is sufficient for remand, then the court will have to address the final two arguments raised by defendant on appeal, those arguments concerning the body camera act. I looked to see if there had been any cases issued since the briefs were filed in this case that dealt with the body camera act. And I only found one case. And that was a case by this division. Justice Coughlin and Justice Walker concurred with it. It was a decision by Justice Hyman issued December 20th in People v. Collins. And although the court addresses the body camera act, it doesn't address it in the same context. So really we have no further guidance since the briefs were filed in this case on how the body camera act is being applied or has been applied or should be applied. And for that reason, I would like to stand on my briefs for the arguments. I have nothing new to add to those arguments and will stand on the briefs for those. I would ask, though, that the court reverse the conviction outright. And again, if remand is necessary to consider how the body camera act plays a role in remand. Thank you. Thank you, Your Honors. May it please the court. Addressing first the mail and hearsay issues. The utility bills, the mail received by defendant in this case, along with all of the other documentary evidence and all the other items containing his name, were properly admitted to show circumstantial evidence of the proof of residence, as has been allowed under Illinois jurisprudence for decades. Council discussed Neal, which does have an extensive discussion about mail being admitted to show proof of residence. But there has not been a single published case in Illinois that has held that documents admitted to show proof of residence violate the rules against hearsay. And Illinois courts from the Supreme Court and Stewart through appellate courts that we cited in our brief have addressed the issue of documentary evidence of items bearing defendant's name and have allowed it as showing circumstantial proof of residence. And items the courts have addressed include laundry receipts, hotel receipts, electric bills, mail, prescription bottles, card titles, all have been admitted to show control. And that is what the mail in this case was admitted to show. Recognize that those cases involve situations such as what we had in Neal, where we had the situation where the defendant had been texting his girlfriend, asking her to get rid of things and also the girlfriend acknowledged to live there. And in many of those cases, the defendant actually acknowledged that he lived there. Your Honor, those cases may have those facts, but that's not required to show control over the property. The evidence in this case was insurmountable. The defendant had control over this property. He was linked to nearly every room in the house from the kitchen with the permission slip to the middle bedroom, which contained the prescription bottles with his name, Michael Carraway, to the clothes in the closet, where most of the narcotics were found, to the north bedroom, which contained multiple documents, including a credit report, an HMO card, defendant's birth certificate. The title of the Tahoe in defendant's name and more than 20 other documents, all bearing defendant's name, and they were all admitted for the same purpose from the utility bills to the prescription medicine to the HMO card to the name written on the binder of a book to show control over the property. The evidence in this case was plentiful. None of those items had that property address as the defendant's address, other than the ComEd bill and the Comcast bill, which was in the mailbox. Your Honor, it's irrelevant that those documents did not contain the address. If the utility bills containing that address were found in a double bag full of narcotics on the street, two miles away from the residence, the state bills found counsel. Are you aware of the facts of this case? Are you real clear about that? There were no utility bills. I apologize. The letters from ComEd and from Xfinity, if those letters were found in a bag of narcotics two miles away from that address, the state would still have admitted them to show that defendant controlled the bag and the narcotics in that bag. That is why the letters were admitted and all of the other documentary evidence was admitted to show control over the property and control over the narcotics in the property. So if a piece of Joe Biden's mail is found in the bag, that's enough to convict him. Is that what you're saying? Your Honor. That's exactly what you just said. So I assume that's what you meant. Your Honor, I am saying that it is evidence of control. If a mail, a letter addressed to Joe Biden was there. So you're saying that you're saying that it's evidence of control, although not conclusive evidence. It is evidence of control. It is up for the jury to determine the weight to give that evidence. And the jury did not just the letters, but the multiple other documents containing defendant's name, including personal documents such as his. Is that the items found in the bag, you're suggesting that they can then be used to prove the address without any other testimony. Your Honor, I am saying that if those letters were found in a bag with defendant's name on them, they would be admissible because they tend to show that the defendant has control over the bag. But they wouldn't be admissible to prove the defendant's address. That's where the hearsay problem comes in. Yes, Your Honor. And neither were the letters here to prove defendant's address. For example, which is not anywhere near related to this case, when you speak about a bag found on the street, you used to say that this must be Judge Walker's bag because Judge Walker's health card is found in this bag. Your Honor, it's an illustration that the reason. My health card or my mail or anything else could have been stolen is why my things are found in this bag or even in this house. Of course, but that was not the evidence in this case. We are confined to what the evidence in this case actually showed. Yes, there were other people that came into that home. The evidence in this case is that there was nothing that proved the defendant's address. That's where the problem comes in. And the ComEd mail, which was not a bill, was used to prove that the defendant lived at this address or resided at this address and therefore had exclusive control over the property and therefore constructed possession of everything found in the property. However, the mail was admitted only to show that the defendant was receiving mail at that address and therefore likely to have control over that property. It was not to prove that he lived at that address. It was to prove just as all the other dozens of documents that were admitted. There have been cases where both the husband and the wife who share the same bedroom and the wife was not involved in the situation and they couldn't prove that the wife had exclusive control because it requires exclusive control, such as she was in constructive possession. Yes, Your Honor, it's constructive possession case. It could be a situation where it's my son who lives with me and drugs are found in my house or my daughter or my friend, my brother, whomever, my cousin. This goes on, but that doesn't get you to enough to show that I'm in exclusive control, that I'm in therefore in constructive possession. Yes, Your Honor, but as the Supreme Court has held in People v. Emory, exclusive possession does not mean sole possession. It does not matter. And there was no evidence that other people were living there, but even if other people were living there, it does not matter. There was no evidence that we don't know who lived there. The state hasn't provided that information. Your Honor, the evidence is that he had control of the property over the multitude of documents containing his name found throughout the rooms. And there's been no evidence as to whether or not their names were on anything. No, Your Honor, there was no evidence. Again, we're limited to the evidence that was in this case, and the evidence in this case points to the defendant as having control over the property. The police didn't even ask them their names. And they were walking into the house despite all the police activity going on. Not asking what's going on, they're walking into the house as if they're at home. Yes. Without even asking them their name. And perhaps they lived there, and perhaps they were neighbors, and it's unclear who they were because no evidence was admitted at trial. We are bound by the evidence that was in this case, and the evidence in this case points to the defendant as having control over the property. And I will just address reasonable doubt as I'm talking about this. It is not just that he had control over the property. It's that he had knowledge and control over all of the narcotics and paraphernalia and cannabis found in the property. There were drugs and drug paraphernalia all over the home. Officers testified that they could smell a strong smell of cannabis immediately upon going into the residence that only got stronger as you went to the bedroom that had the safe with the cannabis and narcotics in it. In the living room, there was a vacuum sealer bag. In the kitchen, there was lactose, which Officer Bukowski, the narcotics expert, testified is a common cutting agent that is used to both increase the yield and decrease the potency when you are creating and manufacturing crack cocaine from cocaine. In the closet in the bedroom that had the safe, that had the male clothing as well, there were plates with narcotics on them. In the room, there was a hot plate. There were respirator masks. There were gloves and clothing. In the safe, which the officers searched, there were, again, multiple more bags. Drugs were found in there, including heroin, cocaine, and cannabis. Zip bags, sandwich bags, and the apple seed bags, which Officer Bukowski testified were commonly used to individually package narcotics. The exact same apple seed bags, if you look at the picture and compare it to the exact same apple seed bags that were found in the drawer in the bedroom that had all of the defendants, not all, but the majority of the documents that were linked to the defendant. So he is linked directly to that locked safe. In the bedroom with the prescription bottles that had the defendant's name, there was also a plate of heroin. It's just unreasonable to believe that the defendant, whose name was all over on documents all over this house, from a permission slip to an HMO card, the defendant had no knowledge, no possession, and no intent to control the narcotics that were plentiful and found all over this house. The evidence in this case was overwhelming. The defendant both had control over the property and the narcotics, cannabis that was found inside that property. Ms. Weber, I have two questions. How much time elapsed between the execution or the defendant leaving the premises to when the police entered the premises? Your Honor, I believe that the defendant was arrested at approximately 1.30, 1 o'clock in the morning. And then the police searched the premises pursuant to a warrant at about 11 o'clock. About 11 o'clock in the morning. So about 10 hours. So your evidence was that during that 10-11 hour period, the property was under surveillance and they saw no one enter or leave the apartment or the building after the defendant left? No. No one attempted to come into the building through the front door, which was the only means of entrance into the building at the time because the back door was barred. The state's evidence was constant surveillance after he left the building to the point where they executed the search warrant? Yes, Your Honor. Number two, what evidence was there connecting the defendant to the male clothing found in the building? Other than men's clothing, was there any testimony connecting the clothing to the defendant? No, Your Honor. There was no specific testimony as to size, just that it was male clothing and no evidence that any other males were living there. Or had control over the property. Just to point out... I think you would agree, the fact that there were men's clothing is just that, that there was men's clothing and the defendant's a male? Yes, Your Honor. It's just one of the factors that the jury had to consider. Okay. Counsel, along those same lines, what evidence was there connecting the defendant to the safe? Your Honor, the evidence connecting the defendant to the safe were the apple seed baggies, which were found inside the safe. And there is a photograph of them in evidence. And the exact same apple seed with the exact same logo, those exact same bags were found in the top drawer of the north bedroom. This was the same dresser that contained the digital scale and had the comment letter on top. It was in the same room with the credit report, the HMO card, the 20 or so documents that contained the defendant's name. And just the amount of hot plates, vacuum sealers, respiratory masks, all of those indicate that the defendant did have knowledge about what was in the safe. Your Honor, just to briefly address the Body Worn Camera Act, you know... I have one other question. Yes, Your Honor. From reviewing the record, it appeared that these drugs were not out and open and, you know, sitting on a counter in a kitchen or anything like that. They were secreted within this property, correct? Well, some of the drugs were on the top shelf in closets. It's unclear whether those closet doors were open or shut, but they were... Okay, so you've got some that are on a shelf, but you don't have anything open on a counter, so when you walk right in the house, it's just open and notorious and sitting there, right? No, I would argue that the smell of cannabis is open and notorious. And then the hot plates, the vacuum sealers, the respiratory mask, all of that other paraphernalia and items that are used in the manufacture of drugs were all throughout the house, in the living room, in the kitchen, in the bedrooms, all throughout the house. How do you respond to my concern, which is that there are at least three adults in that property prior to the time that they all leave and ultimately the defendant is arrested? Well, Your Honor, as I stated before, exclusive possession is not sole possession, and this court is also bound by the evidence and the facts that were admitted at trial. There's no evidence that anyone else had control over that property. Those people come in and out of the house, people come in and out of houses... Well, what evidence is there that any of those people had control over the narcotics that were recovered? There's no evidence that any of those people had control over the narcotics. The only evidence... No, Your Honor, but upon review, it's not this court's duty to try to prove a negative. The evidence was the defendant had control. I just think you'd have a much better case if there was only one person in that property. Yes, Your Honor. Certainly, if the defendant was the only... if they had been watching it for two weeks and the defendant was the only person in and out, that would be a fantastic case. But the evidence in this case was strong that the defendant had access to the property. He was in the property. He was in while they were surveilling it. No one came into the property after he left. And it was his name all over the house in which the narcotics paraphernalia, the smell of narcotics and narcotics open in the closets were all over the house as well. Well, back to Judge Coughlin's question, the narcotics found on the premises, were they inside cabinets? Were they inside dresser drawers? I mean, she asked whether they were out on tables, were they in the process of being cut, bagged, etc. I mean, where were these narcotics? They were in... the narcotics that was out were both on plates in two of the closets in the southeast bedroom, which is the same bedroom that contained the safe and in the middle bedroom, which is the bedroom that contained the prescription bottles with defendant's name on them. In the middle bedroom was also a scale. This was open and notorious. This was not a secret compartment. Tell me if I'm wrong, that your case is that the defendant was the last person out of a building that was later searched. And at the time of the search, no one else had been seen entering the building. And that upon entry of the building that he was the last one out of, narcotics were found throughout the house. Yes, Your Honor. Okay. And the inference that he possessed the narcotics inside the building is supported by the fact that he left the building, nobody else went in there. So therefore, nobody planted the drugs. And his name is all over a bunch of documents, including two mailings from third party sources. But he had other personal items with his name and his son's name on them, found within the structure. And that is your inference that he possessed and controlled the drugs found in the house. Yes, Your Honor. That's your case. That was the people's case. That was our case. Yes. Okay. And why would that be sufficient to sustain the conviction taking the evidence in the light most favorable to the state? Your Honor, it is sufficient because it shows that the defendant had control over the property, which does create an inference that he has control over the items in the narcotics that are also found within the property. These were reasonable inferences for the jury to make. The jury was the finder of fact in this. They heard all of the evidence. They heard the officer's testimony. And it is not unreasonable for the jury to have come to this conclusion and find the defendant guilty in this case. Just briefly with regard to a body-worn camera, the defense counsel argued to the jury that they should consider the fact that the officers were not wearing their body-worn cameras. We are bound by what the statute, the words of the statute, what the statute says at the time. If there's need to clarify as to whether or not every officer needs to wear body cameras throughout departments, then that is certainly up to the legislature. And I do believe that they have in fact passed that now and just requires the signing of the governor. So the fact that they have now clarified that and made it more restrictive I think is an implication that it was not required with the previous body-worn camera statute. But the jury did hear evidence. They could consider whether or not the officers not wearing their body-worn cameras. They could consider that in their consideration of the evidence. But the officer's testimony was unimpeached, it was unrebutted, and it was thoroughly documented through cameras as to the location of where everything found in the house. And I do believe that the jury's finding was supported by the evidence. So, Your Honors, if there are no further questions for these reasons and those contained in our brief, we would respectfully ask that you affirm the defendant's convictions in this case. Thank you. Ms. Weber, isn't it correct that the ComEd bill was read into evidence as proof of his address? Your Honor, not the bill, but the letter. As you pointed out, it's not a bill. I believe that the defense counsel had the officer read the bill into evidence, but again, it was not admitted for the truth of the matter asserted. It was not admitted to show that he in fact had these services or that he lived there, but it did tend to show that he was receiving mail at this house and thus controlled the property. Thank you. The defense lawyer asked the officer to read it into evidence? Yes. On cross-examination, I think one of the letters was opened on the stand at the request of defense counsel and the other... So that was actually the ComCast bill that was read during the defense... I believe both. I believe both, Your Honor. But again, it just tends to show that the defendant was receiving mail. What did the letters say? Your Honor... Homeowner something? The ComEd bill said, welcome to your new home, and the ComCast bill, which was opened on the record, I believe it just said... The words weren't read into the letter, but the officer testified that it looked like it was instructions on how to set up cable. Thank you. Thank you, Your Honor. Thank you. If I may? Sure, Ms. Schunkweiler. I'd like to be very clear on this hearsay issue. I realize Neil is out there, but in this particular case, the record is clear that these mailings and the defendant's name and address on the mailings were used to prove the truth of the matter asserted. They were used to prove that defendant resided there, and the record does not suggest anything else. The record, when we begin with the motion in limine by defense counsel, and defense counsel goes on record with the trial court explaining the issue, saying these are being offered to prove defendant's residency at the house. The state did not deny that, and then went ahead during trial and had the officers read off the name and the address and say that it was proof of residency. There was no limiting instruction in this case. The court's ruling pre-trial on the motion in limine was that it was completely okay for the state to offer the evidence without providing a business records exception to hearsay as evidence of proof of residency. I understand that the state argues on appeal that the evidence was used only to link the defendant to the residence or to show that defendant exerted some control over the residence, but that just is not borne out by the record on appeal here. As far as the evidence, there being no evidence offered in the record of other individuals who may have resided at the location, this goes a little toward the body camera act argument that defendant makes. Defendant's whole theory on defense was that the police had it in for him, that the police were targeting him and that they were only taking inventory of items that implicated him and that they were ignoring evidence that would exculpate him. That was the argument. Interestingly, after defense counsel had tried in limine and at trial to object and bar the admission of the Comcast and the ComEd bills, he went ahead in cross-examining some of the officers and asked them why it was that they chose to inventory the particular piece of Comcast mail or ComEd mail and to elicit testimony that the officers were in fact looking for things that items that linked defendant. And defense counsel's argument was that they weren't looking for other items. And that's what defense counsel was trying to do in cross-examining those witnesses. Looking for other items, like what, for what purpose? If you're proving, if the officers were there trying to establish who lived in the residence, so they walk into a residence, they find a bunch of drugs and drug paraphernalia, they know that they've seen people come and go. You're right about the timeline. My colleague for the state is right about the timeline. There were about 10 hours that passed between the defendant being arrested and the officers conducting their search. During that time, though, there were those two women that came up to the property and tried to gain entrance into the property. So it's not like, I do disagree that no one else had tried to gain entrance to the property. They just weren't let in during the period of time between defendant's arrest and the search the next day. But regardless, this is the police officer, the defense counsel's point at trial, or the point that he was trying to make at trial, is that the officers, all they did was look for items and information that would link defendant and ignored other items. So you have some evidence. Did he say what other items they ignored? Yes. In one of the photographs and evidence, there was a mail that was addressed to another individual. And the question was, well, why didn't you inventory that piece of mail if you had inventory? This was in the fourth bedroom where all of the other documents bearing defendant's name were found. And the question posed to the officer on cross-exam is, well, why didn't you inventory that piece of mail? And then the following question, the defense counsel follows up with, well, did you find other items that indicated that other individuals lived there? And the officer says, yes, I did. What items were those? I don't remember. So the purpose of the questioning by defense counsel was to draw out the argument that the police were targeting him. The defendant's evidence. Just a moment to sum everything up, but you are out of time right now. Yes. If you want to give a closing statement. I would ask that the court reverse defendant's conviction outright based on failure to, a lack of sufficient evidence to support the conviction. To the extent that the court finds the evidence sufficient for remand, I would ask that the court address on remand the application of the Body Camera Act to a new trial in this case. Thank you. Thank you. Thank you both for excellence and have a good day.